1  Louie J. Yanza
   **MAHER • YANZA • FLYNN • TIMBLIN, LLP**
2  115 Hesler Place, Ground Floor
   Gov. Joseph Flores Building
3  Hagåtña, Guam 96910
   Telephone:  (671) 477-7059
4  Facsimile:   (671) 472-5487

5  **Attorneys for Defendant**
6  **DUH WAN KIM**

**FILED**
DISTRICT COURT OF GUAM
NOV 20 2006
MARY L.M. MORAN
CLERK OF COURT

7              IN THE UNITED STATES DISTRICT COURT

8                 FOR THE DISTRICT OF GUAM

9  UNITED STATES OF AMERICA,          CRIMINAL CASE NO. 06-00036

10

11              Plaintiff,

                                      **BRIEF ON DEFENDANT'S RULE 29**
12       vs.                          **MOTION FOR DIRECT VERDICT;**
                                      **CERTIFICATE OF SERVICE**
13 DUH WAN KIM,

14

15              Defendant.

16 _____ /

17            I.    **INTRODUCTION**

18    The issue in the intent matter is whether there was sufficient evidence the

19 Government presented to prove the Defendant attempted possession of 500 grams

20 of methamphetamine hydrochloride.  It is the Defendant's contention that the only

21 evidence presented was that Defendant went to the Holiday Inn to pick up a luggage.

22 The Government did not prove Defendant had knowledge or believed there was

23 methamphetamine hydrochloride in the luggage and the Government did not prove

24

25

-1-
ORIGINAL

quantity. Therefore, Defendant respectfully requests that this Court, as a matter of law, enter a verdict of not guilty.

## II. <u>FACTS</u>

On November 1, 2006, a jury panel was selected and Trial began in this matter. Defendant DUH WAN KIM ("KIM") was charged with one count of Attempted Possession with the Intent to Distribute 500 grams of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §841.

During Trial, the U.S. Government presented the testimony of Drug Enforce Agency ("DEA") Agent Ken Bowman, Task Force Agent Eugene McDonald, DEA Agent Kyong Sun Lim, Task Force Agent Christopher F. Sablan, and Task Force Agent Marvin Desamito. The Defendant did not present any witnesses or evidence.

At Trial, each respective government witness presented the following evidence:

### A. AGENT KEN BOWMAN

Agent Bowman testified that he received information that the confidential source in Korea had advised Korean DEA agents that a certain facilitator was to come to Guam and pickup 500 grams of methamphetamine from two alleged drug couriers. Thereafter, an operational meeting was conducted to prepare for a controlled delivery. The Defendant objected on the grounds that this background evidence was prejudicial; the information was basically hearsay and in violation of <u>Crawford</u>. The Court overruled the Defendant's objections on the grounds that the Government was using the evidence not to prove the truth of the matter asserted

-2-

(i.e., there was 500 grams of methamphetamine in the luggage in which the Defendant was to pickup), but to explain the agent's conduct in setting up the controlled delivery.

Agent Bowman also testified that drug rings use various methods to bring methamphetamine to Guam. Notably, drug rings use two couriers who are followed by a counter-surveillance/ghost. The couriers do not know who the shadow is, but the shadow knows the couriers' identity.

Agent Bowman also testified that he never met the Defendant and has no knowledge of the Defendant's state of mind. Nowhere in Agent Bowman's testimony was there evidence that the Defendant had knowledge he was picking up methamphetamine hydrochloride or that the luggage itself contained 500 grams of methamphetamine hydrochloride.

## B. AGENT EUGENE McDONALD

Agent McDonald testified that he, along with Agent Bowman, conducted surveillance of the Defendant. Agent McDonald testified he was present during the interrogation of the Defendant. Agent Lim was the translator, but determined to act as the language conduit. Agent McDonald testified the Defendant stated that he was to hold the suitcase for a Sung Ho Park. He was to hold the "drugs" for Sung Ho Park until his arrival two days later. Agent McDonald stated the word "drugs" was used and not the words methamphetamine hydrochloride, ice, or meth. And, nowhere throughout Agent McDonald's testimony or reports was the quantity of methamphetamine stated. The Defendant did not specifically admit or confess to Agent McDonald that he knew that there was 500 grams of methamphetamine

-3-

hydrochloride in the luggage. Agent McDonald admitted he would have written 500 grams in his notes if the quantity was discussed.

### C.    AGENT CHRISTOPHER F. SABLAN

Agent Sablan testified about pictures he received from Agent McDonald regarding how the methamphetamine was stored in the suitcase in Korea. The Defendant objected, but the Court overruled the objections based on the same ruling that the evidence is not being used to prove the truth of the matter asserted, but to explain Agent Sablan's placement of the sham methamphetamine into the suitcase.

### D.    AGENT KYONG SUN LIM

Agent Lim testified as to the history of methamphetamine production in Korea. Since 1974, Agent Lim has been working for the DEA, seeing the methamphetamine production move from Korea to China. As far as he knows, the only drug that moves from Korea to Guam is methamphetamine. Agent Lim testified that the word narcotics is a general term used for drugs such as heroine, cocaine, ecstasy, etc. "Bong" is a street lingo for ice. What is important about Agent Lim's testimony is that he never talked about the word "bong" with the Defendant during the translation. And, importantly, Agent Lim said that the quantity of methamphetamine was not even discussed.

### E.    AGENT MARVIN DESAMITO

Agent Marvin Desamito testified about how he prepared the video camera to videotape surveillance of the Defendant and the two couriers at the Holiday Inn.

-4-

## F.    SURVEILLANCE VIDEO

The Government then presented a surveillance video in which the Defendant is seen speaking in the Korean language with two Holiday Inn occupants concerning the Defendant picking up the luggage.  A transcript of the audible portions was provided.  Nowhere in the transcripts was the word methamphetamine hydrochloride ever discussed and nowhere in the transcripts was the quantity of methamphetamine ever discussed.  Not even the identities of the Holiday Inn occupants were disclosed.

## G.    FED.R.CRIM.P. RULE 29 MOTION

On November 7, 2006, the Government rested its case.  The Defendant then orally moved the Court, pursuant to  Rule 29 of the Federal Rules of Criminal Procedure, for a directed verdict.

The Defendant argued that nowhere in the Government's evidence had anyone testified the Defendant admitted to knowing that there was methamphetamine hydrochloride in the suitcase.  And, nowhere in the evidence was the quantity of the methamphetamine ever discussed.  The Court reserved its decision until after the jury's deliberation.

## H.    JURY VERDICT

On November 8, 2006, the jury returned a verdict of guilty of one count of Attempted Possession of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §841 and unanimously found the quantity of methamphetamine hydrochloride at 500

-5-

grams. The Court then instructed the parties to submit their briefs on this issue on whether a directed verdict should be granted.

## III.    ARGUMENT

Rule 29 of the Federal Rules of Criminal Procedure permits a defendant to request the Court for an acquittal if the evidence is insufficient to sustain a conviction. The Court may reserve its decision and issue a decision after the jury has returned its verdict:

> **(a)**    **Before Submission to the Jury.** After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.
>
> **(b)**    **Reserving Decision.** The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.
>
> **(c)**    **After Jury Verdict or Discharge.**
>
> > **(1)**    **Time for a Motion.** A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

-6-

       **(2)**    **Ruling on the Motion.** If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

       **(3)**    **No Prior Motion Required.** A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed.R.Crim.P. Rule 29.

      Whether a Rule 29 motion is to be granted or denied, the Court must examine the evidence in the light most favorable to the Government and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Johnson, 357 F.2d 980, 983 (9th Cir. 2004).

      In the case before us, it is clear there is insufficient evidence to establish the Defendant had knowledge methamphetamine hydrochloride was in the luggage; and there was insufficient evidence to establish the quantity of methamphetamine was in the luggage. Agents Bowman, McDonald and Lim testified a drug ring existed in Korea, and one of the confidential sources advised the local DEA that a facilitator (i.e., Kim) was to come to Guam to pick up a luggage with 500 grams of methamphetamine to deliver it to the local drug lord here. But such testimony was not admitted for the purpose of tying the Defendant to any drug ring or to prove the Defendant's knowledge of 500 grams of methamphetamine in the luggage, but only to explain the DEA's actions in setting up the controlled delivery. No one from Korea or the DEA, and not even the confidential source in Korea, testified the Defendant knew he was picking up methamphetamine hydrochloride. The two couriers in the

-7-

Holiday Inn did not even testify they actually told the Defendant there was methamphetamine hydrochloride in the luggage.

Even the Defendant's discussions with the Holiday Inn occupants revealed Defendant had no knowledge of the contents of the luggage. The Defendant was surprised when the occupants told him there was something dangerous inside. Defendant was surprised they were able to bring in something suspicious since all items are usually seized at the Guam Airport. Even the female occupant was surprised by the Defendant's ignorance and asked "Did you just come here to pick up the luggage?" Government Exhibit 13, p. 7.

The only evidence the Government presented to explain the Defendant's knowledge was the video. But, nowhere throughout the video was methamphetamine hydrochloride discussed or even mentioned. Only the word "drugs" was used. Nowhere did the Holiday Inn occupants actually advise the Defendant that methamphetamine hydrochloride was in the luggage. They did tell the Defendant there was something dangerous inside and then later told the Defendant there were drugs inside. But, how can a jury find the Defendant had knowledge methamphetamine hydrochloride was inside the luggage when other drugs could have been there too? Cocaine, heroin or even ecstasy could have been in the luggage. The jury speculated methamphetamine hydrochloride was involved only because the background evidence was admitted.

There was also insufficient evidence to sustain the jury finding the quantity of methamphetamine hydrochloride was 500 grams. The only evidence that comes remotely close to proving quantity was Exhibit "11", which was admitted via

-8-

testimonies of McDonald and Sablan. Specifically, Exhibit "11" displayed a weight scale displaying 532 grams and a substance purported to be methamphetamine hydrochloride. And, unfortunately, the only way that jury could have found the quantity was 500 grams was through their improper use of Exhibit "11" and Sablan's testimony. Although the Court instructed the jury that Exhibit "11" and the testimony of Agent Bowman, McDonald and Sablan was only to be used to explain the DEA and Sablan's action in preparing and placing 500 grams of sham drugs into the luggage, obviously, the jury ignored the limiting instruction and unanimously found that the quantity was 500 grams. What other evidence was presented that proved quantity?

Because the Government could not establish the Defendant was part of a drug ring, and, therefore, explain how the Defendant was involved in picking up methamphetamine, the background evidence was the only way for this jury to find the Defendant had knowledge he was there to pick up 500 grams of methamphetamine hydrochloride secreted in the luggage. This is clearly insufficient evidence to sustain the conviction.

Regardless of the reason for which the Government presented the evidence, the prejudice is that the jury used the background evidence for the truth of what was stated. _United States v. Reyes_, 18 F.3d 65, 70 (2nd Cir. 1994). The Supreme Court recently revisited its Confrontation Clause _jurisprudence_ in _Crawford v. Washington_, 541 U.S. 36 (2004). In that case, the court rejected the test it had previously established in _Ohio v. Roberts_, 448 U.S. 56 (1980), for the admissibility of a statement by an unavailable hearsay declarant. The _Crawford_ court held that the

-9-

Agent Lim's testimony was that his experience leads him to believe methamphetamine goes to Guam from Korea. And that during the interrogation of the Defendant, the word methamphetamine and quantity was not even discussed.

As for Agent Sablan, had he placed 50 or 1,000 grams of sham drugs in the luggage, would that have been sufficient evidence to support the jury's findings of 50 or 1,000 grams? The answer is no. What Agent Sablan placed into the luggage is irrelevant. Without the admission of the background evidence, e.g., Exhibit "11", the jury could not have made a finding that 500 grams was involved. Without the background evidence, and with only Sablan's testimony, the Government could not have proven Defendant had knowledge or believed that there was 500 grams of methamphetamine hydrochloride in the luggage.

Even more problematic about the Government's lack of evidence on quantity is the affect on the Defendant's sentence. How can the Defendant challenge the net weight or the purity based on a photograph of what is purported to be methamphetamine seized in Korea? The Defendant now faces the minimum 10 years to life imprisonment without an opportunity to test the quantity. 21 U.S.C. §841(b).

A rational jury could not have found Defendant knowingly attempted to possess 500 grams of methamphetamine in the luggage without the background evidence. The jury made an improper finding by using background evidence to prove the Defendant's knowledge and to prove quantity. This is insufficient evidence to sustain the conviction.

-11-

## CONCLUSION

Since there was insufficient evidence to sustain the jury verdict, the Defendant respectfully requests the Court for a directed verdict of not guilty pursuant to Fed.R.Crim.P. Rule 29.

Respectfully submitted this 20th day of November, 2006.

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for Defendant
**DUH WAN KIM**

By: _____
LOUIE J. YANZA

-12-

## **CERTIFICATE OF SERVICE**

I, Louie J. Yanza, hereby certify that on or before November 20, 2006, I caused to be sent by personal service or by facsimile a copy of the annexed **Brief on Defendant's Motion for Direct Verdict; Certificate of Service**, to the following party at her place of business:

Karon V. Johnson, Assistant U.S. Attorney
**OFFICE OF THE UNITED STATES ATTORNEY**
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagatña, Guam 96910
Counsel for the **UNITED STATES OF AMERICA**

Respectfully submitted this 20th day of November, 2006.

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for Defendant
**DUH WAN KIM**

By: _____
LOUIE J. YANZA

-13-