Louie J. Yanza
MAHER • YANZA • FLYNN • TIMBLIN, LLP
115 Hesler Place, Ground Floor
Gov. Joseph Flores Building
Hagåtña, Guam 96910
Telephone: (671) 477-7059
Facsimile: (671) 472-5487

Attorneys for Defendant
DUH WAN KIM

FILED
DISTRICT COURT OF GUAM
DEC - 7 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 06-00036 |
| Plaintiff, | |
| vs. | DEFENDANT'S REPLY IN SUPPORT OF RULE 29 MOTION FOR DIRECTED VERDICT |
| DUH WAN KIM, | |
| Defendant. | |

Nowhere in the Government's Response and in its Supplemental Memorandum has it answered the rhetorical question: Setting aside the hearsay consisting of reports, pictures and statements from Korea barred by <u>Crawford</u>, how has the Government proven the Defendant knew or thought we was picking up a suitcase containing 500 grams of ice? A close analysis demonstrates the Government's evidentiary shortfall. Not a scintilla of evidence was presented to prove Defendant had the <u>knowledge or even thought</u> the suitcase contained 500 grams of ice. Not a single person in the hotel room said "ice," "methamphetamine

hydrochloride," or even the Korean street lingo "bong." Without anyone testifying the Defendant had knowledge, the Government failed to prove the Defendant's *mens rea* – the critical element in this case. The jury could only speculate because the Defendant showed up at the hotel room; and because the case centered around ice. The Government completely ignores its own evidence, or lack of evidence thereof. The Government postures its evidence is circumstantial evidence, but this is a stretch of the imagination. As the record reflects, the Government's evidence is conjectural and only consists of possible scenarios. As a matter of law, this is insufficient evidence to sustain a conviction.

The Government proclaims it proved the ice weight: "We know it was 500 grams because Officer Sablan testified this was the amount he weighed and packaged". Government's Response, at 2. "This was proved through testimony of Officer Sablan when he said that he personally weighed out the 500 grams of rock salt which he placed in the suitcase." Supplemental Memorandum, at 2. But how? What measuring guide did Officer Sablan use to weigh the sham? The Government coyly omits the fact Officer Sablan used photos (Exhibits 4-11) to determine the amount of sham. But what if Officer Sablan packaged only 200 grams of sham (without using the Korea information)? Would the Government still have proven the quantity was 500 grams? The answer is no. What other evidence could the Government present to prove the quantity was 500 grams of ice? The Government completely skirts this issue because there is no other independent evidence. The only way the jury (who disregarded the Court's limiting instructions) determined the weight was through its improper use of the photos (Exhibits 4-11) and the witnesses'

-2-

Case 1:06-cr-00036   Document 76   Filed 12/07/2006   Page 2 of 9

testimonies about what happened in Korea. See, Yanza Declaration. This is the only evidence that indicates the weight. The Government has not pointed to any evidence to the contrary. Such hearsay, barred by Crawford, cannot be weighed in determining the sufficiency of evidence. United States v. Jones, 393 F.3d 107, 111 (2nd Cir. 2004).

The Government did not even have sufficient evidence to prove Defendant's knowledge. The only evidence that is remotely close is the video and the Defendant's interrogation. But the problem is that not a single person in the video said, "ice," "methamphetamine hydrochloride" or "bong." "Drugs" was mentioned, but not the type, nor the quantity. Furthermore, when interrogated by the agents, no mention of the word "ice," "methamphetamine hydrochloride" or "bong" was ever used -- only the word "drugs". The Defendant cannot have knowledge he was picking up ice if he was not told so. Again, netting out the hearsay, what we have is the Defendant going into the Holiday Inn to pickup a suitcase from two people he did not know. Arguably strange, but not in violation of any law. Case law have reversed convictions on such flimsy evidence.

In United States v. Thomas, 114 F.3d 403 (3rd Cir. 1997), a confidential informant told officers she was instructed by a drug dealer to take a suitcase carrying cocaine to a hotel room, leave the suitcase in the hotel room and return the room key to the front desk. Someone would come by to pickup the room key and retrieve the suitcase. The informant never spoke to the defendant. Days later, the defendant was observed obtaining the room key from the front desk and entered the room and was immediately arrested upon exiting with the suitcase. The defendant claimed he

Case 1:06-cr-00036   Document 76   Filed 12/07/2006   Page 3 of 9

was paid $500.00 to pickup the suitcase at the hotel and denied having any knowledge the suitcase contained cocaine. When the defendant was arrested, he was in possession of a cell phone, a pager and a pistol. In addition, the officers retrieved from the defendant, the same telephone number of the informant's drug dealer.

The Court found that the defendant must have known that he was somehow involved in an illicit activity, but the Court held that any conclusion the defendant knew drugs were involved was speculative. Even if the drug lord had spoken to the defendant prior to the transaction, there was no evidence concerning the substance of the phone calls or showing that the defendant had knowledge the suitcase contained cocaine. No one testified he or she spoke to the defendant about cocaine or making arrangements to pickup cocaine. The Court reversed the defendant's conspiracy conviction.

Likewise in <u>United States v. Idowu</u>, 157 F.3d 265 (3rd Cir. 1998), the defendant's friend negotiated to buy two kilograms of heroin from a DEA informant. The defendant drove his friend to the agreed meeting place. During the transaction, the subject of the deal was referred to as "the stuff" rather than "heroin" or "drugs." The defendant gave the DEA informant $20,000.00 in cash. After taking the money, the DEA agent then provided a black suitcase, which had been outfitted to contain heroin in its lining. The defendant opened the black suitcase and stated that he did not see anything inside. The defendant was told that if he pressed the suitcase with his hands, there was "something concealed in the frame of the suitcase." <u>Idowu</u>, at 268. No one testified the defendant knew heroin was to be purchased. From the

-4-

facts, the Court concluded that only two inferences were proper: (1) that the defendant had a pre-existing relationship with his friend; and, (2) the defendant knew he was involved in an illicit transaction. However, the Court held that even if the defendant had been a "trusted" participant in the transaction, the Government's failure to provide evidence that the defendant knew that drugs were in fact the subject matter of the transaction, precluded the jury from inferring the defendant had knowledge of the nature of the deal. The Court rejected the Government's inference that the defendant must have been aware of the subject matter of the transaction simply because his friend felt comfortable speaking about the transaction in front of him. The Court noted that it was not uncommon of managers of clandestine illegal operations to keep their employees isolated from one another and from the overall plan of operation so that they cannot supply evidence against others involved. Id., at 269, n. 3.

In United States v. Jones, 393 F.3d 107 (2nd Cir. 2004), the defendants were charged and convicted for conspiracy to possess and distribute crack cocaine, possession of cocaine with intent to distribute and possession of a firearm in furtherance of drug trafficking. Several police officers testified they observed drug trafficking in the apartment they entered where the defendants were. Two key witnesses did not testify, and the Court permitted hearsay statements to be considered whether drugs were being sold at the unit, but not to support the findings the defendants sold or conspired to sell drugs.

On appeal, the Court reversed the convictions. There was no evidence the defendants "participated in conversations directly related" to dealing crack, or that

-5-

Case 1:06-cr-00036   Document 76   Filed 12/07/2006   Page 5 of 9

defendants "exercised authority" within the alleged conspiracy. Jones, at 112. Neither of the defendants admitted they were engaged in a conspiracy. Id. Other than being present at the scene, no evidence was shown the defendants were involved in a drug scheme.

In this case, as in Thomas, Idowu and Jones, there has been no evidence showing the Defendant knew or thought there was 500 grams of ice in the suitcase; nor any evidence the Defendant participated in conversations directly or indirectly related to acquiring ice; nor were there any evidence Defendant had prior possession of the suitcase or contact with the alleged couriers. The Defendant had a cell phone. The phone numbers on the phone were introduced at trial. Agents Bowman, Lim and Sablan testified they received information from Korea about drugs couriers coming to Guam and that the couriers were to deliver the package to a facilitator, who is then to deliver the package to another person. That the couriers would be followed by a counter-surveillance or ghost. That the Defendant traveled on the same plane with the two honeymooners. The Defendant then came to Holiday Inn to pickup the suitcase from the honeymooners – who were government agents. Taken together, this evidence only supports certain inferences: (1) that drugs were being brought from Korea by one or more persons; (2) the couriers usually do not know the facilitator or the ghost/counter-surveillance; (3) the facilitator would then go to a hotel and pick up the ice facilitator; and (4) that the Defendant went to the Holiday Inn to pickup the suitcase. But in the absence of any conversation indicating the type of drugs; the Defendant's involvement in Korea; or any other direct evidence indicating the Defendant's knowledge, the jury could only speculate as to the Defendant's

knowledge. As a result, the Government did not establish any connection between the Defendant's actions here in Guam and any events which occurred in Korea. Had the Government done so, perhaps the Government could have proven the Defendant's knowledge. But the Government only provided possible combinations which have been plausible, but none established beyond a reasonable doubt. Plausibles are insufficient evidence to sustain a conviction. <u>Jones</u>, at 112. And, mere presence at the crime scene does not constitute intentional participation or knowledge. <u>United States v. Herrera-Gonzalez</u>, 263 F.3d 1092 (9th Cir. 2001).

Then the Government hypothesizes the jury knew the Defendant was not a low-level courier, and was designed to receive the load from the couriers. Government's Response, at 4. What evidence supports this scenario? What evidence established the Defendant was part of an ice-smuggling operation? What evidence established the Defendant was supposed to meet the couriers outside the airport? Was it the Korean information? Again, this was inadmissible hearsay. There was not even evidence the Defendant was conducting surveillance on the honeymooners while on the plane or at the Guam airport. The Defendant was seen talking on a cell phone at the Guam airport. But so what? The Defendant could have been calling a cab or calling the hotel for a ride. There was no evidence to the contrary. Any of these combinations is plausible. But on this record, none is established beyond a reasonable doubt because countless other scenarios do not lead to the ultimate inference the Government seeks to draw. See, <u>United States v. Cartright</u>, 359 F.3d 281 (3rd Cir. 2004) (the government's arguments must not contain

-7-

Case 1:06-cr-00036    Document 76    Filed 12/07/2006    Page 7 of 9

speculation and must be based on a logical and convincing connection to an established fact).

As in Idowu, the Defendant questioned the couriers about what was in the suitcase, when the Defendant was informed of "something dangerous" or "drugs" inside the suitcase. It was natural for the Defendant to be concerned. The Defendant actually looked inside the suitcase to determine whether a bomb or drugs were inside the suitcase. Exhibit 13, p. 3. Defendant asked how they were able to bring out the alleged drugs. Id. A person who was told to pickup a suitcase would not necessarily want to be picking up a suitcase without asking questions after being told about "something dangerous" or "drugs." Anyone would want to know what was in the suitcase before taking it. Was this sufficient to establish knowledge? No, because the ice was concealed and not plainly visible when the Defendant looked through the suitcase. The circumstances of the Defendant picking up the suitcase are arguably suspicious. But the mere presence of the Defendant in the hotel room cannot support the inference that he intended to acquire ice or to distribute ice.

With the Korean witnesses unavailable to testify at trial, the Government's case was thin and lack substantial *indicia* of knowledge of the underlying crime. The crucial testimonial hearsay of what happened in Korea and the photographs of the alleged seized ice in Korea used in securing the conviction of Defendant and how, without this hearsay being admitted, the more profound the insufficiency of the evidence. It presents the marked difference between what the Government said it was going to prove and what was actually presented at trial. While the agents testified as to what they heard from Korea, no evidence established the Defendant's

knowledge. Thus, these nuances highlight the unreliable circumstantial evidence. Based on the evidence against the Defendant, it demonstrates that there is a plausible, rational and innocent explanation for every scenario the Government has theorized. Thus, there is more than reasonable doubt to an inference of guilt that may be drawn therefrom. <u>See</u>, <u>United States v. Sacerio</u>, 952 F.2d 860 (5th Cir. 1992) (mere suspicion cannot support a guilty verdict). There is insufficient evidence against the Defendant, and when reviewed most favorably upon the Government, cannot support any rational, fact-finding exercise capable of identifying the Defendant's state of mind, that is, is knowing and intent to pickup a suitcase containing 500 grams of methamphetamine or his deliberate intent necessary to sustain the conviction of the crime.

## CONCLUSION

Based upon the review of the arguments and the record before us, it is respectfully requested that this Court set aside the conviction of the Defendant and grant Defendant's Rule 29 Motion for Directed Verdict, consistent with the evidence in this case.

Respectfully submitted this 7th day of December, 2006.

**MAHER • YANZA • FLYNN • TIMBLIN, LLP**
Attorneys for Defendant
**DUH WAN KIM**

By: _____
LOUIE J. YANZA