Kim.sentrsp

LEONARDO M. RAPADAS
United States Attorney
KARON V. JOHNSON
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Agana, Guam 96910
Telephone: (671) 472-7332/7283
Telecopier: (671) 472-7334

Attorneys for the United States of America

FILED
DISTRICT COURT OF GUAM
JAN 23 2007
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DUH WAN KIM, <br><br> Defendant. | CRIMINAL CASE NO. 06-00036 <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT** |

A. The Safety Valve Reduction

The United States erred when it adopted the findings of the presentence report, filed January 17, 2007. In fact, the government believes that defendant is not entitled to the two-level reduction he was accorded pursuant to USSG § 2D1.1(b)(9). This section provides for a two-level reduction if the defendant qualifies for the "safety valve," USSG § 5C1.2(a). Yet the fifth criteria of the safety valve provides that the defendant "no later than the time of the sentencing hearing," provide to the government "all information and evidence the defendant has concerning the offense or offenses that were part of the same court of conduct or of a common scheme or plan, ...." Defendant went to trial The presentence report did not recommend an adjustment for

acceptance of responsibility because he has maintained he is innocent of this offense. He has not provided any information to the DEA concerning the drug trafficking ring of which he was a member. At the time of his arrest, defendant said that he was to pick up the suitcase from the people at the hotel, and hold it until his friend, Sun Ho Park, came to Guam in a few days to retrieve it. This was a lie.

Attached hereto as Exhibit A is the initial report provided by the Korean authorities in this matter. It reflects that the main organizers of this venture were Man Kwan LEE and Chong Ho CHOI, who were arrested at the same time as was the defendant on Guam. Both immediately agreed to cooperate. Choi had asked the Korean informant, Sun Ho Park, to find two couriers to deliver a half-kilo of ice to Guam. Defendant was to provide counter surveillance on the flight, then after the couriers had cleared the airport, retrieve the suitcase and deliver it to the organization's main distributor on Guam, Young Sik Kim. Choi said he gave defendant 500 grams of ice, which he and the informant Park took to the Incheon airport. At the airport, Park gave the suitcase to the couriers, so the defendant could identify them. Choi and Lee said that defendant provided counter surveillance during the flight to Guam. Choi said that defendant had been instructed that once he reached Guam, he was to collect the suitcase from the couriers and deliver it to Young Sik KIM, who was the organization's main distributor on Guam. As the trial testimony demonstrated, DEA identified Young Sik Kim as the occupant of 606 Pia Marine, where defendant went after leaving the airport. When DEA agents executed a search warrant on Kim's apartment Friday evening, a day after defendant's arrest, they found the apartment empty and learned that Kim had fled to Korea that morning.

Accordingly, defendant does not meet the standards for the safety valve, and should not receive the two-level reduction provided by §2D1.1(b)(9). The defendant's total offense level should be 38, with a term of 235-293 months incarceration.

//
//

-2-

Case 1:06-cr-00036   Document 86   Filed 01/23/2007   Page 2 of 10

B. Defendant's Request For a Role Reduction.

Defendant contends that he was a minimal participant in this scheme and accordingly is entitled to a four-level reduction pursuant to USSG § 3B1.2  Defendant has the burden of proving this by a preponderance of the evidence. United States v. Barajas, 360 F.3d 1037 (9th Cir. 2004). Section 6A1.3(a) provides that "in resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." The district court's determination whether such an item of evidence is reliable is reviewed for abuse of discretion. United States v. Pinto, 48 F.3d 384, 389 (9th Cir. 1995).

The government will introduce Exhibit A at sentencing, and hopes to have further reports concerning subsequent actions taken by the Korean authorities as a result of these arrests. Such reports, obviously, are hearsay. In Williams v. New York, 337 U.S. 241 (1949), the Court held that sentencing judges could consider hearsay. Before it can be relied upon, however, the courts require that it possess some minimal indicia of reliability. In United States v. Huckins, 53 F.3d 276 (9th Cir. 1995), for example, the district court relied upon the interview of a co-defendant, who asserted that the defendant has possessed a firearm during the course of several robberies. The government, however, indicated it had no evidence to corroborate the co-defendant's statements and the defendant denied he ever possessed or used a gun. On appeal, the court held that the statements of the co-defendant, which were not made under oath, and which were taken during the course of plea negotiations, where he may have been attempting to curry favor with the government, were unreliable and should not have been used by the sentencing judge.

Even the unsworn statements of confederates may be considered reliable, if they are consistent and sufficiently corroborated. In United States v. Berry, 258 F.3d 971, 977 (2001), the sentencing court relied upon the statements of four of defendant's cohorts, all of whom had been involved in a mail theft/check cashing ring, to determine that defendant was the leader and

-3-

Case 1:06-cr-00036   Document 86   Filed 01/23/2007   Page 3 of 10

organizer of the scheme. The appellate court affirmed his role enhancement, holding that the statements of his confederates were sufficiently coherent to establish their reliability.

The reports of Korean law enforcement officers are inherently reliable. There is no motive to exaggerate defendant's role in the offense, and the narrative provided by the leaders of the organization corroborates what occurred on Guam. Defendant cites numerous cases where mere couriers received minimal role reductions in drug trafficking schemes. Obviously, defendant was not a courier, but rather a trusted member of the organization. He received the suitcase of ice from Choi, delivered it to the informant, Park, at the airport and acted as counter surveillance during the flight to Guam. His job was to secure the suitcase from the couriers, and deliver it to the ring's main distributor on Guam, Young Sik Kim. This is hardly the role of a minor player.

Indeed, it is questionable whether defendant qualifies for any role reduction, given that his defense was that he did not know there were drugs in the suitcase, and if he did, he did not know what sort of drugs they were. In Barajas, supra, the defendant was arrested as he walked out of a rough shelter beside a field of marijuana plants which were growing on Forest Service land, several miles off the beaten path. Officers found a beer can with his fingerprints at a second site higher up the mountain. Defendant went to trial and testified that he had just met some fellows the night before who hired him to pick tomatoes. He arrived at the campsite after dark, and was shocked–shocked[1] to walk out of the shelter in the morning and find marijuana instead of tomatoes. The appellate court agreed there was ample circumstantial evidence from which the jury could find he was knowingly involved in marijuana cultivation. The appellate court also agreed that he had failed to carry his burden of proving he played a minor role in the offense. Given that he testified he had no role at all, "the district court did not clearly err in finding that the evidence did not demonstrate that Mr. Barajas had a minor role in the offense." Id. at 1043.

---

[1] See Casablanca

Defendant argues that his conduct was less significant than that of the ringleaders of the group, which should entitled him to a role reduction. This argument fails, unless he can prove that his conduct in the offense was "substantially" less culpable than his confederates. "[M]erely being less culpable than one's co-participants does not automatically result in minor [participant] status." United States v. Andrus, 925 F.2d 335, 338 (9th Cir. 1991). United States v. Cantrell, 433 F.3d 1269 (9th Cir. 2006) illustrates this point. The principal drug dealer, N. Cantrell, received an upward role adjustment as the leader of a methamphetamine trafficking operation which involved his wife, daughters, and other friends and relatives. His daughters, A. Walker and T. Walker, contended they were entitled to minimal or minor role adjustments, because they had simply accompanied their father or mother to purchase the drugs and had been present when the purchase money was exchanged. Thus, they argued, their conduct was less culpable than that of their parents, and the role reduction should follow as a matter of course. The district court rejected their arguments and the appellate court affirmed. The court agree. While a defendant's conduct is to be measured against his co-defendants, not some hypothetical average participant, "[i]t is not enough that a defendant was less culpable than his or her co-participants, or even that he or she was among the least culpable of the group, because a minimal or minor participant adjustment under § 3B1.2 is available only if the defendant was 'substantially' less culpable than his or her co-participants." Id. at 1283 (citations omitted). The daughters were making the trips voluntarily, and were facilitating the distribution of large amounts of methamphetamine. They did not merit a role reduction simply because other people were doing more.

//
//
//
//
//
//

| | |
|---|---|
| 1 | The government believes defendant's total offense level should be 38, which requires a |
| 2 | range of 235-298 months incarceration. |
| 3 | Respectfully submitted this 23rd day of January, 2007. |

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: *(signature)*
KARON V. JOHNSON
Assistant U.S. Attorney

```
FROM: DEA HONOLULU OFFICE

TO:   DEA HQS WASHINGTON DC
      DEA LOS ANGELES FIELD DIVISION
      AMEMBASSY CANBERRA
      AMEMBASSY MANILA
      AMEMBASSY BANGKOK
      AMEMBASSY SEOUL
      AMEMBASSY KUALA LUMPUR
      AMEMBASSY TOKYO
      AMEMBASSY BEIJING
      AMCONSUL HONG KONG
      AMEMBASSY HANOI
      AMEMBASSY SINGAPORE
      JIATF-W
      EPIC


SENSITIVE BUT UNCLASSIFIED - PLEASE PROTECT ACCORDINGLY

POSTS FOR DEA ONLY: DEA HQS FOR OE/HARRIGAN; OEA; OEE/SHERMAN; OIE;
OSE/HUNT; JIATF-W/HOBAN; SARI

LAFD ATTN:  A/SAC RALPH W. PARTRIDGE; A/ASAC DON LADERER; INTELLIGENCE
SUPERVISOR LORI L. FERNANDES

BANGKOK CO:               REGIONAL DIRECTOR ANDRE J. KELLUM
SEOUL CO:                 CA TROY DERBY; SA GLENN MOORE
KUALA LUMPUR CO:          CA PHILLIP A. RYAN
BEIJING CO:               CA MICHAEL MCCORMICK
HONG KONG CO:             CA GENE GOON
TOKYO CO:                 CA DANIEL G. MOORE
SINGAPORE CO:             CA RUSSELL C. HOLSKE
RANGOON CO:               CA JOSEPH W. SHEPHERD
HANOI CO:                 CA JEFFREY P. WANNER
CANBERRA CO ATTN:         CA RICHARD J. JOYCE
MANILA CO ATTN:           CA TIMOTHY C. TEAL


SUBJECT: RB-06-0022/WGA3I; CHOI, CHANG HO

CCX: WL-06-0005/WEA3I; CHOI, CHANG HO

RE:  ARREST OF KIM DUH WAN IN GUAM IN RELATION TO SEIZURE OF
APPROXIMATELY 500 GRAMS OF METHAMPHETAMINE IN SEOUL, KOREA.

ON AUGUST 23, 2006, THE GUAM RESIDENT OFFICE (GRO) WAS CONTACTED BY THE
DEA SEOUL COUNTRY OFFICE (SCO) IN REFERENCE TO INFORMATION PROVIDED BY
A KOREAN BASED COOPERATING SOURCE (CS) WHO ADVISED THAT A KOREAN
NATIONAL, IDENTIFIED AS CHOI CHONG HO, HAD ASKED HIM/HER TO RECRUIT TWO
COURIERS FOR THE PURPOSE OF TRANSPORTING APPROXIMATELY 500 GRAMS OF
METHAMPHETAMINE TO AN UNIDENTIFIED RECEIPIENT LOCATED IN GUAM.  UPON
RECEIVING THIS INFORMATION, THE SCO, IN CONJUCTION WITH THEIR KOREAN
COUNTERPARTS, PROVIDED THE CS WITH TWO UNDERCOVER COURIERS.  THE SCO
```

EXHIBIT

WAS ADVISED THAT ONCE THE COURIERS HAD ARRIVED IN GUAM, HE/SHE WAS TO CONTACT CHOI WHO WOULD IN TURN CONTACT THE UNIDENTIFIED RECEIPIENT IN GUAM. ACCORDING TO THE CS, THE UNIDENTIFIED RECEIPIENT WOULD THEN MEET THE COURIERS AT THEIR HOTEL TO RETRIEVE THE METHAMPHETAMINE.

ON THE ABOVE DATE, THE CS RECEIVED A SUITCASE CONTAINING APPROXIMATELY 500 GRAMS OF METHAMPHETAMINE FROM A KOREAN NATIONAL, IDENTIFIED AS KIM DU HWAN, AT THE INCHEON NATIONAL AIRPORT. THE SCO ADVISED THAT THE CS THEN TRANSFERRED CUSTODY OF THE SUITCASE TO THE COURIERS WHO PROCEEDED TO KOREAN CUSTOMS WHERE THE METHAMPHETAMINE WAS REMOVED FROM THE SUITCASE.

AFTER RESEALING THE SUITCASE, THE UNDERCOVER COURIERS BOARDED KOREAN AIRLINES FLIGHT #807 ENROUTE TO GUAM. KIM WAS ALSO OBSERVED BOARDING THE FLIGHT BUT DID NOT MAKE CONTACT WITH THE COURIERS.

UPON ARRIVING AT THE GUAM INTERNATIONAL AIRPORT, THE COURIERS WERE SERUPTICIOUSLY TRANSPORTED TO THE HOLIDAY RESORT, ROOM #843, BY GRO PERSONNEL FOR PURPOSES OF CONDUCTING AN UNDERCOVER MEETING WITH THE UNKNOWN RECEIPIENT.

AFTER CLEARING GUAM CUSTOMS, KIM WAS OBSERVED EXITING THE AIRPORT WHEREBY HE WAS TRANSPORTED BY AN UNKNOWN INDIVIDUAL TO THE PIA MARINE HOTEL, LOCATED IN TUMUNING, GUAM. AFTER SEVERAL HOURS, KIM DEPARTED THE PIA MARINE HOTEL AND TRAVELED TO THE ROYAL ORCHID HOTEL, LOCATED IN TUMON, GUAM, WHERE HE RENTED ROOM #511.

WHILE AWAITING THE ARRIVAL OF THE UNIDENTIFIED RECEIPIENT, GRO AND GUAM CUSTOMS PERSONNEL PLACED APPROXIMATELY 500 GRAMS OF "SHAM" METHAMPHETAMINE INTO THE SUITCASE IN ANTICIPATION OF ARRESTING THE UNIDENTIDIED RECEIPIENT ONCE HE OR SHE ACCEPTED THE SUITCASE.

ON AUGUST 25, 2006, THE CS NOTIFIED SCO PERSONNEL THAT HE/SHE HAD CONTACTED CHOI AND PROVIDED HIM WITH THE COURIER'S HOTEL AND ROOM NUMBER. THE CS ADVISED THAT CHOI STATED HE WOULD CONTACT THE UNIDENTIFIED RECEIPIENT ON GUAM AND INSTRUCT HIM/HER TO RETRIEVE THE METHAMPHETAMINE.

AT APPROXIMATELY 4:45 P.M., AGENTS OBSERVED KIM DEPART THE ROYAL ORCHID HOTEL AND TRAVEL TO THE HOLIDAY RESORT. KIM SUBSEQUENTLY ENTERED THE HOTEL WHERE HE MET WITH THE COURIERS IN ROOM #843. AFTER APPROXIMATELY ONE-HALF HOUR, KIM ASSUMED CUSTODY OF THE SUITCASE CONTAINING THE "SHAM" AND ATTEMPTED TO EXIT THE ROOM WHEREBY HE WAS ARRESTED AT APPROXIMATELY 5:45 P.M.

AFTER BEING ADVISED OF HIS MIRANDA WARNING, KIM STATED HE WAS RECRUITED BY AN INDIVIDUAL IDENTIFIED AS "PARK LNU" AND INSTRUCTED TO RETRIEVE THE METHAMPHETAMINE FROM TWO COURIERS AT THE HOLIDAY HOTEL. KIM STATED HE WAS TO THEN DELIVER THE METHAMPHETAMINE TO AN INDIVIDUAL IDENTIFIED AS "YOUNG SIK" WHO RESIDED AT THE PIA MARINE HOTEL. KIM ADVISED THAT HE WAS TO CONTACT "YOUNG SIK" AT TELEPHONE NUMBER "671-649-3962" WHEN HE ARRIVED ON GUAM.

ON THAT SAME DAY, KOREAN INTELLIGENCE OFFICIALS LOCATED IN SEOUL, KOREA, ADVISED GUAM AGENTS THAT KOREAN LAW ENFORCEMENT OFFICIALS HAD ARRESTED TWO KOREAN NATIONAL MALES IDENTIFIED AS LEE MAN KWAN AND CHOI CHANG HO IN ASSOCIATION WITH KIM'S ARREST. BOTH INDIVIDUALS AGREED TO

COOPERATE WITH KOREAN OFFICIALS AND ADVISED THAT KIM AND PARK LNU HAD MET WITH LEE IN DAEJON, KOREA, ON AUGUST 23, 2006. DURING THAT MEETING, KIM AND PARK RECEIVED APPROXIMATELY 500 GRAMS OF METHAMPHETAMINE WHICH THEY TRANSPORTED TO THE INCHEON INTERNATIONAL AIRPORT. WHILE AT THE AIRPORT, KIM TRANSFERRED THE SUITCASE CONTAINING THE METHAMPHETAMINE TO PARK LNU WHO IN TURN PROVIDED THE SUITCASE TO THE COURIERS. PER LEE AND CHOI, KIM WAS TO PROVIDE COUNTER-SURVEILLANCE OF THE COURIERS FROM KOREA TO GUAM FOR THE PURPOSE OF ENSURING THE SUCCESS OF THE DELIVERY. BOTH INDIVIDUALS STATED THAT ONCE KIM AND THE COURIERS HAD ARRIVED IN GUAM, KIM WAS TO DELIVER THE METHAMPHETAMINE TO AN INDIVIDUAL IDENTIFIED AS KIM YOUNG SIK A.K.A. "YOUNG SIK". LEE AND CHOI ADVISED THAT KIM YOUNG SIK WAS THE ORGANIZATION'S CHIEF DISTRIBUTOR OF METHAMPHETAMINE ON GUAM.

GUAM FEDERAL LAW ENFORCEMENT OFFICIALS SUBSEQUENTLY RECEIVED INFORMATION FROM LOCALLY BASED CONFIDENTIAL SOURCES THAT KIM YOUNG SIK RESIDED AT THE PIA MARINE HOTEL, ROOM #606. GRO AGENTS WERE SUBSEQUENTLY GRANTED A FEDERAL SEARCH WARRANT FOR THE ABOVE LOCATION HOWEVER, KIM YOUNG SIK HAD APPARENTLY FLED HIS RESIDENCE EARLIER THAT DAY. AGENTS LOCATED TWO SAFES WHICH HAD BEEN EMPTIED ALONG WITH SEVERAL HUNDRED EMPTY JEWELERY BOXES AND MONEY WRAPPERS. THE ROOM ALSO CONTAINED SEVERAL DOCUMENTS CONTAINING LEE AND CHOI'S NAMES.

KIM DUH WAN HAS BEEN CHARGED WITH ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE IN THE DISTRICT OF GUAM. THE GRO PLANS TO FURTHER THIS INVESTIGATION BY EXPLOITING EVIDENCE SEIZED FROM KIM YOUNG SIK'S RESIDENCE TO INCLUDE BANK ACCOUNTS AND ASSOCIATED BUSINESS HOLDINGS.

THE GRO WISHES TO THANK THE SCO AND KOREAN INTELLIGENCE AGENCIES FOR THEIR CONTINUED ASSISTANCE AND EXCHANGE OF INFORMATION REGARDING THIS INVESTIGATION.

(U) PER DEA AGENTS MANUEL 6235.1, THIS TELETYPE IS IN LIEU OF A DEA-6, REPORT OF INVESTIGTAION (ROI). THIS TELETYPE WAS PREPARED BY SA PAUL GRIFFITH AND REVIEWED BY RAC ANTONIO M. MARQUEZ.

(U) PLEASE DIRECT ALL INQUIRIES TO SA PAUL GRIFFITH OR RAC ANTONIO M. MARQUEZ AT GRO TELEPHONE NUMBER (671) 472-7384 OR VIA FIREBIRD E-MAIL.

(SBU) INDEXING SECTION:

1. CHOI, CHONG HO - NADDIS #5256863.

2. KIM, DUH WAN - NADDIS NEGATIVE - FACILITATOR FOR DELIVERY OF APPROXIMATLEY 500 GRAMS OF METHAMPHETAMINE SEIZED IN SEOUL, KOREA, WHICH WAS BOUND FOR GUAM. ARRESTED ON 08-25-2006 IN GUAM FOR ATTEMPTED POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE.

3. PARK LNU - NADDIS NEGATIVE - REPORTED SOS FOR 500 GRAMS OF METHAMPHETAMINE SEIZED IN SEOUL, KOREA.

4.  LEE, MAN KWAN - NADDIS #5362710.  SOS FOR 500 GRAMS OF METHAMPHETAMINE SEIZED IN SEOUL, KOREA.  METHAMPHETAMINE WAS INTENDED FOR DISTRIBUTION IN GUAM.

5.  KIM, YOUNG SIK - NADDIS #2816253.  REPORTEDLY, MAIN DISTRIBUTOR OF METHAMPHRTAMINE ON GUAM FOR KOREAN BASED LEE MAN KWAN ORGANIZATION.

DECONTROL UPON RECEIPT BY DEA ONLY

APPROVED:

ANTHONY D. WILLIAMS
ASAC HONOLULU DISTRICT OFFICE