# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DUH WAN KIM,<br><br>Defendant. | Criminal Case No. 06-00036<br><br>**ORDER RE: MOTION FOR JUDGMENT OF ACQUITTAL** |

The Defendant's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29(b) came before this court for a hearing on December 28, 2006. The Defendant argued that the evidence was insufficient to convict him of attempted possession of methamphetamine with the intent to distribute, of which the jury found him guilty. After hearing argument from counsel and reviewing the submissions, the court took the Defendant's motion under advisement. For the reasons set forth below, the motion is **DENIED**.

## BACKGROUND

On or about August 23, 2006, Duh Wan Kim (the "Defendant") and two Korean couriers, posing as a newlywed couple (the "couple"), traveled from Korea to Guam. After arriving at the Guam airport, the Defendant and the couple went their separate ways and the Defendant later met up with the couple at the Holiday Resort Guam Hotel in order to retrieve a piece of luggage from them. At the hotel the Defendant and couple engaged in conversation which led to the topic of the contents of the luggage. The couple informed the Defendant that

there was "something dangerous" in the luggage – there were drugs in there. The Defendant took possession of the luggage and left the hotel room whereupon he was apprehended by law enforcement agents and subsequently charged with one count of attempted possession with the intent to distribute five hundred (500) grams of methamphetamine hydrochloride ('ice'). The case proceeded to trial and on November 1, 2006, a jury convicted the Defendant of one count of attempted possession with the intent to distribute 500 grams of methamphetamine hydrochloride.

## DISCUSSION

The Defendant now moves this court for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(b). Rule 29 of the Federal Rules of Criminal Procedure provides for a defendant to move for a judgment of acquittal if the evidence is insufficient to sustain a conviction. The rule provides:

> **(a) Before Submission to the Jury.** After the prosecution closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction. If the court denies a motion for a judgment of acquittal at the close of the prosecution's evidence, the defendant may offer evidence without having reserved the right to do so.
>
> **(b) Reserving Decision.** The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict. If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

In ruling on a Rule 29 motion the court must view the evidence in the light most favorable to the government. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979)(holding that in considering a motion for judgment of acquittal, the court must view the evidence presented in the light most favorable to the government). "We review the sufficiency of evidence to support a criminal conviction by viewing the evidence in the light most favorable to the prosecution and determining whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Garza*, 980 F.2d 546, 552 (9th Cir. 1992) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789,

2

61 L.Ed.2d 560 (1979)). "When reviewing the sufficiency of the evidence, we must 'assume that the jury resolved all . . . matters in a manner which supports the verdict.'" *Id.* (citation omitted).

The Defendant argues that there was insufficient evidence presented to the jury to prove the Defendant attempted to possess 500 grams of methamphetamine hydrochloride. Specifically, the Defendant claims the government failed to prove 1) that the Defendant had knowledge or believed there was methamphetamine in the luggage or 2) that he knew the quantity involved. Accordingly, the Defendant seeks acquittal on the grounds that the government failed to prove its case.

The Defendant cites to a number of cases in support of his position. In *U.S. v. Thomas*, 114 F.3d 403 (3rd Cir. 1997), the defendant was convicted of conspiracy to possess cocaine with intent to distribute. At trial, the evidence showed that the defendant was paid $500 to go to a hotel room and check on a bag. The bag allegedly contained twenty-four kilos of cocaine. Upon exiting the hotel room, the defendant had on his person a 9mm pistol registered to him, a pager, a cellular phone, a Virgin Islands driver's license, an envelope with "Cousin Melvin Smith"[1] written on it, and the room key. The defendant was arrested and convicted. The Third Circuit reversed the conviction and found that there was no evidence concerning what the bag contained. The court found that the defendant must have known he was involved in some illicit activity however, any conclusion that the defendant knew drugs were involved was based on impermissible speculation by the jury.

The Defendant next cites to *United States v. Idowu*, 157 F.3d 265 (3rd Cir. 1998). In *Idowu*, the defendant drove the co-defendant, his friend, to an agreed meeting place to purchase heroin. The defendant was the one who handed over $20,000 to a DEA informant for the purchase. After tendering the money, the defendant was given a black bag, which supposedly contained the heroin in its lining. The defendant opened the bag and stated that he did not see

---

[1] An envelope containing the room key was left at the front desk by an informant for "Cousin Melvin Smith."

3

anything inside. The informant told the defendant to press the suitcase with his hands and explained that "something" was concealed in the frame of the suitcase. The defendant was convicted of conspiracy to possess with intent to distribute more than one kilogram of heroin. However, the Third Circuit reversed the conviction. The court found that no one had testified or presented evidence that the defendant ever knew that heroin was to be purchased. There were no discussions that the subject of the deal was "heroin" or "drugs" in the presence of the defendant. The court found that the defendant did not give any indication that he knew drugs were involved.

The last case cited by the Defendant is *United States v. Jones*, 393 F.3d 107 (2nd Cir. 2004). In *Jones*, the defendants were convicted of conspiracy to possess and distribute crack cocaine, possession of cocaine with intent to distribute, and possession of a firearm in furtherance of drug trafficking. The convictions were reversed. The Second Circuit found that there was insufficient evidence to support the convictions. Other than being present at the scene, no evidence linking the defendants to a drug scheme was shown.

Unlike the conspiracy cases cited to by the Defendant, there is little doubt that the Defendant knew that the bag contained "drugs" and that he intended to deliver the bag to another. The Defendant arrived on the same flight as the two couriers and later tracked down the couple and met with them at a hotel in order to retrieve a piece of luggage. Moreover, the video tape evidence at trial showed that the Defendant was told that the luggage contained drugs and that he nevertheless took deliberative steps to take possession of the luggage in order to hold it until he could turn it over to a Mr. Sung Ho Park. The Ninth Circuit has ruled that the sharing of drugs constitutes a distribution under 21 U.S.C. § 841(a)(1). *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir.1979). Additionally it has held in *United States v. Wright*, 593 F.2d 105 (9th Cir.1979) that, in enacting § 841(a), "Congress intended to prevent individuals from acquiring drugs for whatever purpose on behalf of others and then transferring the drugs to those others." *Id.* at 108.

There was evidence showing that the Defendant's role in the activity was that of a trusted participant in a drug ring and that as such he knew the type of drug involved. For

4

example, Drug Enforcement Administration ("DEA") Special Agent Kenneth Bowman testified that one of the methods used by drug rings to bring methamphetamine to Guam is to use two couriers followed by a counter-surveillance/ghost. While the couriers do not know the identity of the ghost, the ghost knows the identity of the couriers. In this instance, the evidence showed that the Defendant was the ghost. In addition, DEA Agent Kyong Sun Lim testified that the only drug moving from Korea to Guam is methamphetamine. He further testified that it has been this way for the last thirty years. *See United States v. Brady*, 579 F.2d 1121, 1127 (9th Cir.1978) (circumstantial evidence is intrinsically no different from direct evidence; circumstantial evidence can be used to prove any fact, including facts from which another fact is inferred). "The elements of possession with intent to distribute may be established by circumstantial evidence." *U.S. v. Gonzales*, 121 F.3d 928, 936 (5th Cir. 1997). "A jury may infer the intent to distribute a controlled substance from quantity alone." *United States v. Innie*, 7 F.3d 840, 844 (9th Cir.1993).

As to the quantity issue, the government argues that it only had to prove what the Defendant thought he possessed and the actual weight of the substance in his hand. *See United States v. Quijada*, 588 F.2d 1253 (9th Cir. 1978). In *Quijada*, the defendant was convicted of attempt to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Although the substance which the defendant believed to be cocaine later was revealed to be a noncontrolled substance, the court found that the "defendant should be treated in accordance with the facts as he supposed them to be." *Id.* at 1255.

Here, Guam Customs Officer Chris Sablan testified that the luggage contained over 500 grams of sham methamphetamine, i.e., rock salt. The reason he placed 500 grams of sham in the luggage was because the DEA had been informed that 500 grams of methamphetamine were to be delivered to a local drug dealer on Guam. This testimony was offered to explain the DEA's actions regarding the quantity of sham.

The jury was instructed that the government had to prove the weight of the substance

which the defendant was attempting to possess.[2] At trial the jury was given the following instruction:

> The defendant is charged in the Indictment with attempted possession with intent to distribute methamphetamine hydrochloride, in violation of Sections 841(a)(1) and 846 of Title 21 of the United States Code. In order for the defendant to be found guilty of that charge, the government must prove each of the following elements beyond a reasonable doubt:
>
> First, the defendant intended to possess methamphetamine hydrochloride with the intent to deliver it to another person; and
>
> Second, the defendant did something that was a substantial step toward committing the crime, with all of you agreeing as to what constituted the substantial step; and
>
> Third, the approximate net weight in grams was the amount alleged in the indictment.
>
> Mere preparation is not a substantial step toward the commission of the crime of possession of methamphetamine hydrochloride with the intent to distribute.
>
> To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.
>
> If you find, beyond a reasonable doubt, that defendant knowingly and intentionally attempted to possess methamphetamine hydrochloride with the intent to distribute it, it is no defense that the substance he in fact possessed was not methamphetamine hydrochloride.
>
> On the other hand, if you do not find beyond a reasonable doubt that the defendant believed the substance involved to be methamphetamine hydrochloride even though you might find all of the other elements of the offense present beyond a reasonable doubt, then it would be your duty to acquit the defendant.
>
> This is because he had to have the state of mind, and the evidence must establish beyond a reasonable doubt that he had the state of mind, to intend to possess methamphetamine hydrochloride with the intent to distribute it.

In addition, the court gave the jury a limiting instruction several times during the trial that "statements or reports from Korean government officials and DEA agents to another DEA agent(s) or Guam Customs Officer(s) concerning events in Korea is not proof the Defendant

---

[2]The indictment charged the defendant of attempting to possess 500 grams of methamphetamine. While quantity of drugs is not an element to the offense charged, both the government and the Defendant requested that this element be added as an element the jury had to find.

6

knew or had knowledge the luggage while it was in Korea contained 500 grams of methamphetamine hydrochloride." Despite this instruction, the jury found beyond a reasonable doubt that the Defendant intended to possess 500 grams of methamphetamine hydrochloride with an intent to distribute.

However, the Defendant claims that in reaching its verdict the jury impermissibly relied on photos taken in Korea to establish the 500 grams. After the trial, jury foreman, Mr. Reuel C. Drilon ("Mr. Drilon"), informed Defendant's counsel that the jury considered the pictures (Exhibit 4-11) to determine the weight of the drugs. *See* Declaration of Louie J. Yanza, Esq. at ¶s 4-5. The pictures depicted the suitcase confiscated in Korea as well as the bagged methamphetamine hydrochloride placed on a scale. The Defendant claims the jury committed misconduct and that an evidentiary hearing under Federal Rules of Evidence, Rule 606(b) is warranted to ascertain what evidence the jury used in reaching its verdict.

Rule 606(b) provides that:

> [u]pon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes.

FED.R.EVID. 606(b).

Under Rule 606(b) a court may inquire into the verdict if "extraneous prejudicial information was improperly brought to the jury's attention or [if] any outside influence was improperly brought to bear upon any juror." Fed.R.Evid. 606(b). "Federal Rule of Evidence 606(b) is grounded in common-law rule against admission of jury testimony to impeach a verdict and the exception for juror testimony relating to extraneous influences." *Tanner v. United States*, 483 U.S. 107, 121 (1987). "Extraneous information" refers to a factor originating outside of normal courtroom proceedings which influences jury deliberations, such as a statement made by a bailiff to the jury, the introduction of a prejudicial newspaper account

into the jury room, or a threat against a juror. *Peveto v. Sears Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir.1987).

The evidence that the Defendant contends was extraneous in this instance was actually admitted into evidence for the jury's consideration, with curative limiting instructions. The jury was not exposed to any information beyond that received in evidence at trial. The evidence in question did not enter the jury room through an external, prohibited route. It was part of the trial, and was part of the information each juror collected. The evidence may have possibly been misused by the jury, and indeed was the subject of a jury instruction limiting it use.[3] But it cannot be characterized as "extraneous information," and falling within the exception outlined in Rule 606(b). *See Peveto v. Sears Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir.1987) (Allegations of jury confusion caused by jury instructions would not be an outside influence about which a juror could competently testify). "Rule 606(b) has consistently been used to bar testimony when the jury misunderstood instructions." *United States v. Jones*, 132 F.3d 232 (5th Cir. 1998); *see also Robles v. Exxon Corp.*, 862 F.2d 1201, 1204 (5th Cir.1989) (holding that juror testimony regarding misunderstanding of instructions is prohibited by rule 606(b)).

By contrast here, each of the cases cited by the Defendant involved a jury's consideration of information that was not admitted into evidence at all, as opposed to information properly admitted into evidence but allegedly used for an improper purpose. In *United States v. Keating,* 147 F.3d 895 (9th Cir. 1998) the jury learned that the defendant had a prior conviction. In *United States v. Meader*, 118 F.3d 876 (1st Cir. 1997) investigation of post-verdict allegation of juror bias was properly conducted. In *Bayramoglu v. Estelle*, 806 F.2d 880 (9th Cir. 1986), a juror researched penalties for first and second degree murder and injected extrinsic material into the deliberations. In *Jeffries v. Wood*, 114 F.3d 1184 (9th Cir.

---

[3]There is likewise the possibility that the jury used the evidence in question as the court instructed. Juries are presumed to follow the court's instructions. *United States v. Johnson*, 618 F.2d 60, 62 (9th Cir. 1980).

8

1997), one juror told other jurors that the defendant had a criminal record. In *Sassounian v. Roe*, 230 F.3d 1097 (9th Cir. 2000), the jury was made aware of extraneous evidence of a telephone call to the Turkish embassy claiming credit for the assassination of Turkish consul general. In *Marino v. Vasquez*, 812 F.2d 499 (9th Cir. 1987), juror misconduct involving unauthorized out-of-court experiment conducted by juror with her husband regarding use of a handgun and reference to dictionary definitions constituted prejudicial error. In *United States v. Navarro-Garcia*, 926 F.2d 818 (9th Cir. 1991), a juror engaged in an out-of-court experiment by placing approximately three hundred pounds in the trunk of her car and then driving the car to ascertain whether it handled differently.

Accordingly, it is clear that under the circumstances, Rule 606(b) applies, and the statements of Mr. Drilon concerning what evidence the jury relied upon in reaching its verdict is purely a deliberative process which is off limits for this court's inquiry. "Courts generally may not question jurors concerning any matter relating to jury deliberations other than the potential exposure of jury members to 'extraneous prejudicial information.'" *United States v. Snype*, 441 F.3d 119, 140 (2nd Cir. 2006); *see also United States v. Thomas*, 116 F.3d 606, 618 (2d Cir.1997) (emphasizing that "[t]he secrecy of deliberations is the cornerstone of the modern Anglo-American jury system"); *United States v. DiSalvo*, 34 F.3d 1204, 1225 (3rd Cir.1994) (precluding post-verdict inquiry of jury into inferences drawn from certain evidence). Indeed, courts go to great lengths to avoid post-verdict inquiries into the substance of jury deliberations. *See United States v. Thomas*, 116 F.3d at 619-20. "A jury has an obligation to follow the law as it is given by the trial court, but it is a peculiar facet of the jury institution that once a verdict is rendered, no judicial inquiry is permitted into the jury's deliberative process to determine if in fact the court's instructions were followed." *United States v. D'Angelo*, 598 F.2d 1002, 1004 (5th Cir. 1979).

In sum, combining the facts as presented at trial the court sees no manifest miscarriage of justice in concluding that the Defendant associated with, participated in, and in some way acted to further the possession and distribution of methamphetamine on or about August 23, 2006, in the District of Guam. The court finds there was a sufficient basis for the jury to find

9

1 beyond a reasonable doubt that the Defendant was aware of the fact that the contents of the
2 luggage was supposedly methamphetamine hydrochloride and that he took possession of the
3 luggage with the intent to pass it along. *See United States v. Hernandez-Herrera*, 273 F.3d
4 1213 (9th Cir. 2001) (A judgment of acquittal is appropriate only if after considering the
5 evidence in the light most favorable to the government, no rational trier of fact could have
6 found the essential elements of the crime beyond a reasonable doubt).[4]

## CONCLUSION

The court finds that the government presented evidence sufficient to support a jury's guilty verdict on the charge of attempted possession with the intent to distribute 500 grams of methamphetamine hydrochloride. Accordingly, the court **DENIES** the Defendant's motion as set forth herein. In addition, the court **DENIES** an evidentiary hearing regarding any alleged jury misconduct.

**IT IS SO ORDERED**, this 13th day of February 2007



/s/ **Hon. Frances M. Tydingco-Gatewood**
**Chief Judge**

---

[4] In the future, it would be the preference of this court for the government to present a more solid case and that missing witnesses, for example, in this case, the agents in Korea who actually took possession of the luggage with the drugs in it, be brought to court to testify. While the court finds there was enough evidence to go to the jury in this instance, the court also finds the government presented a minimal case and that the prosecution was less than vigorous.

10